DAVID B. BARLOW, United States Attorney (#13117)
JARED C. BENNETT, Assistant United States Attorney (#9097)
185 South State Street #300
Salt Lake City, Utah 84111
tel: (801) 325-3259; fax: (801) 325-3261
jared.bennett@usdoj.gov

IGNACIA S. MORENO, Assistant Attorney General
LUTHER L. HAJEK, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace - Suite 370
Denver, CO 80202
tel: (303) 844-1376; fax: (303) 844-1350
luke.hajek@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UINTAH COUNTY, UTAH, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>KEN SALAZAR, Secretary,<br>U.S. Department of the Interior, *et al.*,<br><br>        Defendants,<br><br>SOUTHERN UTAH WILDERNESS<br>ALLIANCE, *et al.*,<br><br>        Intervenor-Defendants. | Case No. 2:10-cv-970-CW<br>Case No. 2:11-cv-391-CW<br>(consolidated)<br><br>**DEFENDANTS' OPPOSITION TO<br>PLAINTIFFS' JOINT MOTION FOR<br>JURISDICTIONAL DISCOVERY AND<br>FOR AN EXTENSION OF TIME TO<br>RESPOND TO THE MOTIONS TO<br>DISMISS** |

| | |
|---|---|
| STATE OF UTAH,<br><br>        Plaintiff,<br><br>    v.<br><br>KEN SALAZAR, Secretary, U.S. Department of the Interior, *et al.*,<br><br>        Defendants,<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*,<br><br>        Intervenor-Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    I.      Plaintiffs' Motion for an Extension of Time Should Be Denied ............................2

    II.     Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.......................3

          A.     Plaintiffs Bear the Burden of Demonstrating that
                Jurisdictional Discovery is Necessary for Resolution of
                Defendants' Motion to Dismiss ...................................................................4

          B.     The Court Can Decide the Legal Issues Presented in
                Defendants' Motion Without Requiring Burdensome
                and Time Consuming Discovery ..................................................................5

                 1.      Discovery is Not Necessary to Determine Whether
                          Plaintiffs Have Standing ................................................................5

                 2.      Discovery is Not Necessary to Determine Whether
                            Plaintiffs Have Challenged a Discrete Final
                          Agency Action ..............................................................................11

                 3.      Discovery is Not Necessary to Determine
                            Whether Plaintiffs' Claims Are Ripe for Review .........................13

                 4.      Discovery is Not Necessary to Determine Whether
                            the Court Has Jurisdiction Over Plaintiffs' Breach
                        of Contract Claims ........................................................................15

                 5.      Discovery is Not Necessary to Determine Whether
                            BLM May Manage Lands to Protect Wilderness
                        Characteristics...............................................................................16

          C.     Even if the Court Grants Decides that Some Discovery is
                 Appropriate, It Should Deny Plaintiffs' Requests Because
                 They Are Overly Broad ...............................................................................17

CONCLUSION.....................................................................................................19

i

## TABLE OF AUTHORITIES

## CASES

Abbott Labs. v. Gardner, 387 U.S. 136 (1967)................................................................13

Anthony v. United States, 667 F.2d 870 (10th Cir. 1981)............................................11

Ash Creek Mining Co. v. Lujan, 969 F.2d 868 (10th Cir. 1992)....................................9

Baca v. King, 92 F.3d 1031 (10th Cir. 1996) ...............................................................9

Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291
      (10th Cir. 2004)....................................................................................................4

Bennett v. Spear, 520 U.S. 154 (1997) .......................................................................12

Breakthrough Mgmt. Grp,. Inc. v. Chukchansi Gold Casino
      and Resort, 629 F.3d 1173 (10th Cir. 2010) .................................................4, 17

Budde v. Ling-Temco-Vought, Inc., 511 F.2d 1033 (10th Cir. 1975)............................4

Burglin v. Morton, 527 F.2d 486 (9th Cir. 1975) .........................................................9

Dunn v. Ickes, 115 F.2d 36 (D.C. Cir. 1940)...............................................................9

Grynberg v. Ivanhoe Energy, Inc., 666 F. Supp. 2d 1218 (D. Colo. 2009).........5, 17, 19

Hansen v. PT Bank Negara Indonesia (Persero), TBK, 601 F.3d 1059
      (10th Cir. 2010)..................................................................................................17

Iowa ex rel. Miller v. Block, 771 F.2d 347 (8th Cir. 1985).......................................7, 8

Jarvis v. Regan, 833 F.2d 149 (9th Cir. 1987)...........................................................6, 7

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).............................15

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990).....................................................11

Marathon Oil Co. v. Babbitt, 966 F. Supp. 1024 (D. Colo. 1997),
      aff'd 166 F.3d 1221 (10th Cir. 1999) ........................................................9, 10, 11

New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,
    565 F.3d 683 (10th Cir. 2009) ........................................................16

Norton v. S. Utah Wilderness Alliance, 542 U.S. 55 (2004) .........................................11

Or. Natural Desert Ass'n v. BLM, 625 F.3d 1092 (9th Cir. 2010) ................................16

Pennsylvania v. Kleppe, 533 F.2d 668 (D.C. Cir. 1976) ...............................................6

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) .................................................8

Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477 (10th Cir. 1995)...........11, 14, 15

Robbins v. BLM, 438 F.3d 1074 (10th Cir. 2006) ........................................................16

Ruzzo v. Placer Dome Inc., No. 03:05-CV-00671, 2006 WL 2457690
    (D. Nev. Aug. 23, 2006) ..........................................................4, 17

Sierra Club v. Peterson, 228 F.3d 559 (5th Cir. 2000) .................................................12

Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320 (10th Cir. 2002)....................4, 12, 16

Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.,
    425 F.3d 735 (10th Cir. 2005) .....................................................10

Stewart v. Kempthorne, 554 F.3d 1245 (10th Cir. 2009) ...............................................6

Summers v. Earth Island Inst., 129 S. Ct. 1142 (2009) ................................................6

Udall v. Tallman, 380 U.S. 1 (1965)...................................................... 7, 8-9

Utah Ass'n of Counties v. Bush, 455 F.3d 1094 (10th Cir. 2006) ...............................3, 19

Utah v. U.S. Department of Interior, 535 F.3d 1184 (10th Cir. 2008) ....................13, 15

Wyoming ex rel. Sullivan v. Lujan, 969 F.2d 877 (10th Cir. 1992)....................8, 9, 18

## STATUTES

Pub. L. No. 112-10, 125 Stat 38 (2011)......................................................15

Pub. L. No. 112-36, § 101, 125 Stat 386 (2011)...........................................15

**INTRODUCTION**

Defendants U.S. Department of the Interior ("DOI") et al. hereby oppose Plaintiffs' Joint Motion for Jurisdictional Discovery with Respect to the Motions to Dismiss Filed by the Federal Defendants and Defendant-Intervenors and Extension of Time to Respond to the Motions to Dismiss Until Discovery is Complete (Dkt. No. 82) and address Plaintiffs' arguments in their Memorandum in Support thereof ("Plf. Mem.") (Dkt. No. 83).

Plaintiffs' requests should be denied. Plaintiffs have had almost three months to prepare a response to Defendants' motion to dismiss and have offered no basis for failing to respond to the motion to dismiss on the due date. On the day their response was due, they instead filed a motion seeking jurisdictional discovery. Such a request should have been submitted well in advance of the date that Plaintiffs' response was due, and Plaintiffs had ample time to do so. Therefore, the request for an extension should be denied. Plaintiffs should be ordered to immediately file a response to the motion to dismiss or risk waiving their right to respond.

Furthermore, Plaintiffs' request for jurisdictional discovery is without basis and should be denied. Plaintiffs bear the burden at the outset of the litigation to establish the basis for their standing and to ensure that they have challenged final agency actions that are ripe for review. Plaintiffs should not be permitted to file a complaint first and attempt to justify their jurisdiction through discovery later. The Court can decide the jurisdictional issues and also whether certain claims should be dismissed for failure to state a claim without discovery. Defendants have not placed any facts in controversy, and Defendants do not, for purposes of the motion to dismiss, dispute the factual allegations made by Plaintiffs based on the declarations and documents they have submitted. Because there are no factual disputes, no discovery should be granted.

1

Plaintiffs' request for discovery will only have the effect of delaying these proceedings and burdening Defendants without producing any pertinent information bearing on the legal issues now before the Court.  Furthermore, Plaintiffs' requests are overly broad and are not narrowly tailored to factual issues bearing on whether jurisdiction was proper at the time that suit was brought.  Accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

## ARGUMENT

### I.   Plaintiffs' Motion for an Extension of Time Should Be Denied

Plaintiffs' motion for an extension of time to respond to Defendants' motion to dismiss should be denied.  Plaintiffs' response to the motion was initially due on August 26, 2011, per the parties' stipulated briefing schedule.  June 1, 2011 Order (Dkt. No. 39).  Subsequently, on August 10, 2011, Plaintiffs moved for an extension of time until September 30, 2011 to submit a response to the motion to dismiss, and Defendants did not oppose that request.  Plaintiffs' Motion for an Extension of Time (Dkt. No. 77).  In that motion, Plaintiffs stated that, "[t]he consolidated Plaintiffs are examining several options, including the possibility of moving to amend the complaints or requesting jurisdictional discovery, *in addition to filing a response*."  Id. at 2 (emphasis added).  The Court granted the extension and ordered Plaintiffs to "file their responses to the motions to dismiss by September 30, 2011."  August 12, 2011 Order (Dkt. No. 79).

Plaintiffs waited until the date their opposition was due to move for a second extension of time.  Despite having been in possession of Defendants' motion to dismiss for over three months, they now request 180 days to conduct discovery and to file an opposition to the motion to dismiss.  Plf. Mem. at 2.  There is nothing in the Court's rules that allows a litigant to submit requests for jurisdictional discovery in lieu of responding to a motion to dismiss.  To the contrary, the rules state

2

that, "[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."  DUCivR 7-1(d).

Plaintiffs have offered no argument in support of their motion for an extension of time and have offered no justification for their failure to either file their request for jurisdictional discovery earlier or to respond, at least in part, to Defendants' motion to dismiss.  Plaintiffs have simply assumed that the Court will grant their requested extension.  Moreover, as explained below, discovery is not necessary to resolve the threshold jurisdictional questions presented in Defendants' motion to dismiss.  Therefore, the Court should deny Plaintiffs' request for an extension and order Plaintiffs to immediately respond to Defendants' motion to dismiss or waive their right to respond.

## II.  Plaintiffs' Request for Jurisdictional Discovery Should Be Denied

Plaintiffs' request for jurisdictional discovery should be denied because the Court does not need additional facts to address Defendants' legal arguments in the motion to dismiss.  Plaintiffs offer a number of declarations and documents, which they claim support their standing and relate to Defendants' arguments regarding final agency action and ripeness.  None of these documents demonstrate that the Court has jurisdiction in this case.  More importantly, the discovery that Plaintiffs seek will not overcome the legal defects in Plaintiffs' complaints.  It is the Plaintiffs' burden to establish that the Court has jurisdiction at the outset of the litigation.  Utah Ass'n of Counties v. Bush, 455 F.3d 1094, 1099-1100 (10th Cir. 2006).  Plaintiffs have failed to do so, and no amount of discovery will overcome the legal defects present in Plaintiffs' complaints.  Furthermore, even if the Court were to determine that some jurisdictional discovery were appropriate, Plaintiffs' requests are overly broad and therefore should be denied on that basis as well.

### A.  Plaintiffs Bear the Burden of Demonstrating that Jurisdictional Discovery is

3

**Necessary for Resolution of Defendants' Motion to Dismiss**

A district court has broad discretion in determining whether to allow jurisdictional discovery in response to a motion to dismiss.  Breakthrough Mgmt. Grp. Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1189 (10th Cir. 2010).  A court should grant jurisdictional discovery if the denial of such discovery would result in prejudice to the party seeking discovery.  Id.; Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1326 (10th Cir. 2002).  A party would be prejudiced by a lack of discovery where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary."  Sizova, 282 F.3d at 1326 (quoting Wells Fargo v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977)).  The burden is on the party seeking jurisdictional discovery to demonstrate that such discovery is necessary for resolution of the issues presented in the motion to dismiss.  Breakthrough Mgmt. Grp., 629 F.3d at 1189-90 & n.11.

A court should not grant jurisdictional discovery where the discovery sought would not be likely to reveal facts bearing on the jurisdictional issue before the court.  See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004) ("Given the very low probability that the lack of discovery affected the outcome of this case we find no abuse of the district court's discretion here."); Budde v. Ling-Temco-Vought, Inc., 511 F.2d 1033, 1035 (10th Cir. 1975) ("Implicit in the trial court's order quashing service and dismissing the complaint for lack of jurisdiction is a determination that further discovery would not demonstrate facts sufficient to constitute a basis for personal jurisdiction . . . .").  "Discovery should be denied 'when it is clear that further discovery would not demonstrate sufficient facts to constitute a basis for jurisdiction.'"  Ruzzo v. Placer Dome Inc., No. 03:05-CV-00671, 2006 WL 2457690, at *1 (D. Nev. Aug. 23, 2006)

4

(unpublished) (citation omitted); see also Grynberg v. Ivanhoe Energy, Inc., 666 F. Supp. 2d 1218, 1228 (D. Colo. 2009) (denying jurisdictional discovery where the proposed discovery was "largely irrelevant to the jurisdictional issues . . . before the court" and was "unlikely to have a real impact on the resolution of these issues.").[1]

### B. The Court Can Decide the Legal Issues Presented in Defendants' Motion Without Requiring Burdensome and Time-Consuming Discovery

Plaintiffs have failed to show that the discovery they seek is necessary to resolve the jurisdictional issues before the Court or even relevant to the jurisdictional and other arguments raised in Defendants' motion. In the motion to dismiss, Defendants argued that Plaintiffs' claims should be dismissed for lack of standing, final agency action, and ripeness. Defendants also argued that the breach of contract claims should be dismissed for lack of jurisdiction and that the claims alleging that the U.S. Bureau of Land Management ("BLM") lacked the authority to manage lands to protect wilderness characteristics should be dismissed for failure to state a claim. The Court can decide all of those issues without requiring Defendants to engage in a burdensome and time consuming discovery process.

#### 1. Discovery is Not Necessary to Determine Whether Plaintiffs Have Standing

In the motion to dismiss, Defendants argued that Plaintiffs lacked standing on a number of separate grounds. See Defendants' Memorandum in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 15-29 (Dkt. No. 68). The Plaintiffs "bear[] the burden of showing that [they] have standing for each type of relief sought." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149

---

[1] In support of their motion for jurisdictional discovery, Plaintiffs submit an order regarding discovery in Utah v. Babbitt, No. 2:96-CV-870 B (Dkt. No. 83-8). That order, however, does not clarify the jurisdictional discovery that was ordered or the basis for the order. Therefore, it is

(2009).  Defendants argued that all of Plaintiffs alleged injuries were insufficient to establish standing.   First, Defendants argued that Plaintiffs' alleged injury based on an alleged loss of royalty revenue and potential delay of beneficial development projects were barred by the doctrine of *parens patriae*.  Def. Mem. at 17-19.   Such alleged injuries to the Plaintiffs' "economy and the health, safety, and welfare of its people clearly implicate the parens patriae rather than the proprietary interest of the [Plaintiffs]."  Pennsylvania v. Kleppe, 533 F.2d 668, 671 (D.C. Cir. 1976).   Further, Defendants argued that Plaintiffs' alleged loss of revenue was insufficient to establish standing for their National Environmental Policy Act ("NEPA") claims because economic injuries do not fall within the zone of interest of NEPA.  See Def. Mem. at 19-20.   Whether Plaintiffs' claims are barred under the *parens patriae* doctrine and whether Plaintiffs' NEPA claims fall within the zone of interest of NEPA are legal issues that can be resolved without discovery, and Plaintiffs' proposed discovery request would not reveal any information relevant to the resolution of these legal issues. See Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir. 1987) (jurisdictional discovery is appropriate only when factual, not legal, issues are presented).

Second, Defendants argued that Plaintiffs' alleged loss of royalty revenue, even if not barred by the *parens patriae* doctrine, was insufficient to establish standing because such losses were too speculative to establish injury, such potential losses were not fairly traceable to the challenged actions by DOI, and such alleged injuries were not redressable by the Court.  Def. Mem. at 20-27. Plaintiffs' alleged losses are speculative because they assume that DOI's policies will result in fewer oil and gas leases and less royalty revenue to the Plaintiffs.  Id. at 21; see, e.g., Stewart v. Kempthorne, 554 F.3d 1245, 1254 (10th Cir. 2009) (finding that Kane and Garfield Counties alleged

of limited utility in determining whether jurisdictional discovery is appropriate in this case.

loss of revenue from grazing permits was "merely conjectural or hypothetical" and therefore insufficient to establish standing). Further, Plaintiffs' alleged loss of royalty revenue "is the sort of generalized grievance about the conduct of government" that is insufficient to establish standing. Iowa ex rel. Miller v. Block, 771 F.2d 347, 353 (8th Cir. 1985). Defendants also argued that Plaintiffs' injuries were not fairly traceable to any actions by DOI because Plaintiffs had not identified any particular parcels that were nominated for leasing but that were deferred from leasing by BLM. Def. Mem. at 24-25. Finally, Defendants argued that any loss of royalty revenue was not redressable because the Secretary has broad discretion to determine whether to offer particular parcels for lease. See id. at 26-27; Udall v. Tallman, 380 U.S. 1, 4 (1965).

Plaintiffs argue that they require discovery regarding BLM's deferral of certain parcels from oil and gas leasing in order to demonstrate their alleged loss of royalty revenue. See Plf. Mem. at 11-12, 13-14. Plaintiffs argue that this discovery is necessary to rebut Defendants' assertion that Plaintiffs have not identified any particular parcels that have not been offered for lease sale because of their wilderness characteristics. Id. at 14. They also offer a declaration and a BLM document, which they assert show that BLM deferred certain parcels because they were in the area of the Red Rocks Bill. See Declaration of John Harja ¶ 7 (Dkt. No. 83-12); Deferred Lands List at 3 (Dkt. No. 83-5). For purposes of Plaintiff's motion, however, Defendants do not dispute that certain parcels were deferred because they are in areas with wilderness characteristics. Accordingly, there is no factual dispute to serve as a basis for the requested discovery.

Moreover, the fact that BLM has taken the discretionary action of deferring leasing in certain areas with wilderness characteristics does not mean that Plaintiffs have demonstrated a cognizable legal injury sufficient to establish standing. Plaintiffs' alleged loss of revenue is still speculative.

They assume that, in the absence of DOI's policies, BLM would offer more parcels for lease sale, that companies would purchase those leases and develop the parcels, and that the parcels would be productive, resulting in increased bonus payments and royalty revenue to the Counties.  This chain of assumptions is "a conjecture based on speculation that is bottomed in surmise."  Wyoming ex rel. Sullivan v. Lujan, 969 F.2d 877, 882 (10th Cir. 1992).  Further, no additional factual information is necessary to decide whether such alleged economic losses are sufficient to establish standing; they are necessarily *insufficient* because they constitute a "'generalized grievance about the conduct of government.'"  Miller, 771 F.2d at 353 (quoting Kleppe, 533 F.2d at 672).  In addition, as we pointed out in our motion, if a parcel is nominated by industry but is not accepted for leasing, the party most directly affected would be the company nominating the parcel, not Utah or the Counties. See Def. Mem. at 23.  Thus, under the Supreme Court's limitations on prudential standing, any claims challenging such decisions should be brought by the affected companies, not the Plaintiffs. See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).

Finally, and most significantly, no amount of discovery will enable Plaintiffs to overcome the lack of redressability of their claims.  Even assuming Plaintiffs are correct -- that the Secretary instructed BLM to defer from leasing certain parcels with wilderness characteristics and that, as a result, certain parcels nominated for leasing were, in fact, deferred -- such an action is entirely within the Secretary's discretion, and the Court cannot order the Secretary to offer nominated parcels for leasing.  As explained by the Supreme Court:

> The Mineral Leasing Act of 1920, 41 Stat. 437, 30 U.S.C. 181 et seq. (1958 ed.), gave the Secretary of the Interior broad power to issue oil and gas leases on public lands . . . .  Although the Act directed that if a lease was issued on such a tract, it had to be issued to the first qualified applicant, it left *to the Secretary discretion to refuse to issue any lease at all on a given tract*.

8

Udall, 380 U.S. at 4 (emphasis added); see also Marathon Oil Co. v. Babbitt, 966 F. Supp. 1024,

1025-26 (D. Colo. 1997) (dismissing for lack of standing a claim by an oil company seeking to

compel DOI to offer tracts for oil and gas leasing), aff'd 166 F.3d 1221 (10th Cir. 1999); Burglin v.

Morton, 527 F.2d 486, 488 (9th Cir. 1975); Dunn v. Ickes, 115 F.2d 36, 37-38 (D.C. Cir. 1940).

Due to the Secretary's broad discretion to determine whether individual parcels should be

leased, Plaintiffs' claims must fail for lack of redressability.  See Sullivan, 969 F.2d at 882; Baca v.

King, 92 F.3d 1031, 1036-37 (10th Cir. 1996); Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 876

(10th Cir. 1992).  The information that Plaintiffs seek, e.g., information regarding parcels nominated

by industry and whether those parcels are in citizen-proposed wilderness areas, see Plf. Mem. at 14,

will not illuminate the legal issue of whether Plaintiffs' claims are redressable.

The decision in Marathon Oil is instructive.  In that case, Marathon Oil Company sought to

compel BLM to offer disputed parcels of land for competitive oil leasing.  966 F. Supp. at 1025.

The court found that Marathon lacked standing for lack of redressability under the Tenth Circuit's

opinions in Ash Creek Mining, Sullivan, and Baca.  The court explained:

> Only an order of this court compelling the executive branch to make land available
> for competitive leasing under the Mineral Leasing Act would likely redress
> Marathon's claimed injuries. This, I do not have the power to do. I therefore dismiss
> the case for lack of standing.

Marathon Oil, 966 F. Supp. at 1026.  Accordingly, just as in Marathon Oil, the Plaintiffs' alleged

injuries are not redressable, and the Court should dismiss the case without allowing needless and

burdensome discovery.

Third, Defendants argued that Plaintiffs' alleged injuries based on BLM's actions with

respect to Title V right of way authorizations were insufficient to establish standing because

Plaintiffs had failed to identify any Title V applications that had been denied or delayed.  Def. Mem. at 27-29.  In addition, we pointed out that Plaintiffs had failed to request any specific relief with respect to any Title V applications that had been denied or had not been acted upon.  Id. at 28.

In response, Plaintiffs argue that they need discovery to determine whether any applications for rights of way have been denied or delayed.  See Plf. Mem. at 16-17.  Plaintiffs fail to explain, however, why they need discovery regarding BLM's handling of their own Title V right of way applications.  If such applications were made and were denied, then Plaintiffs already know that fact. On the other hand, if such applications were made and have not yet been acted upon, Plaintiffs would know that fact too.  Any applications for rights of way filed by Plaintiffs should be in Plaintiffs' possession, as should any responses from BLM regarding such applications.

Indeed, Plaintiffs have identified a number of rights of way which they allege may be affected by DOI's policies, e.g. Seep Ridge Road, Southam Canyon, Atchee Wash, Saddle Tree Draw, Cedar Mountain, and Indian Creek.  Id. at 17; see also Declaration of Robert E. Turri ¶¶ 4-5 (Dkt. No. 83-9); Harja Decl. ¶ 9.  If Plaintiffs have filed applications for rights of way and those applications have been denied or unreasonably delayed, then Plaintiffs could file claims seeking to have such denials overturned or to obtain a ruling regarding an application.  However, Plaintiffs' complaints do not make any such allegations or seek any such relief.

In addition, Plaintiffs are not prohibited from conducting routine maintenance activities on their R.S. 2477 rights of way.  See Southern Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 745 (10th Cir. 2005).  Therefore, Plaintiffs' allegations that they are harmed by not being able to repair these roads should fail as a matter of law.  See Affidavit of Mike McKee ¶ 12

(Dkt. No. 83-2) (alleging that Uintah County is being "frustrated in its ability to provide for the safety of its citizens and to ensure effective search and rescue missions").

Moreover, if Plaintiffs have been injured by an action implementing BLM's policies, they should not need discovery to determine what the action is and what their injury is. Plaintiffs are required to demonstrate their standing at the commencement of the lawsuit and at all phases of the lawsuit. Powder River Basin Res. Council v. Babbitt, 54 F.3d 1477, 1484-85 (10th Cir. 1995). Indeed, if they were unaware of their injuries, they should not have filed their complaints. Plaintiffs should not be permitted to "use discovery as a fishing expedition" in the hopes of establishing the Court's jurisdiction. Anthony v. United States, 667 F.2d 870, 880 (10th Cir. 1981). Accordingly, no discovery is necessary for the Court to determine whether, on the basis of Plaintiffs' complaints, Plaintiffs have sufficiently alleged injury to claimed rights of way to support standing.

### 2. Discovery is Not Necessary to Determine Whether Plaintiffs Have Challenged a Discrete Final Agency Action

In the motion to dismiss, Defendants argued that Plaintiffs had failed to challenge "circumscribed, discrete agency actions," as required by the Administrative Procedure Act ("APA"). Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62 (2004) ("SUWA"). Rather, Plaintiffs' claims were broad programmatic challenges, which are prohibited by the Supreme Court's opinions in SUWA, 542 U.S. at 64, and Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 890 (1990). This limitation protects agencies from undue judicial interference and protects courts from having to enter "general orders compelling compliance with broad statutory mandates" that would "inject[] the judge into day-to-day agency management." SUWA, 542 U.S. at 66-67. Moreover, even if the Plaintiffs had identified one or more final agency actions in their complaints, an entire program

11

"cannot be laid before the courts for wholesale correction under the APA." Lujan, 497 U.S. at 893; see also Sierra Club v. Peterson, 228 F.3d 559, 566 (5th Cir. 2000) ("Nor is this programmatic challenge made justiciable by the fact that the environmental groups identified some specific sales in their pleadings that they argue are final agency actions."). Furthermore, Defendants argued that Secretarial Order 3310 and the Master Leasing Plan ("MLP") policy were not final agency actions under the Supreme Court's test in Bennett v. Spear, 520 U.S. 154, 178 (1997). See Def. Mem. at 29-30, 34-35.

In their motion, Plaintiffs address the discrete final agency action argument only briefly. They argue that the discovery they seek would "connect these specific actions to direction from the Secretary" and would "further establish the final nature of the agency action and the ripeness of the claims in this matter." Plf. Mem. at 15. These vague arguments do not establish that discovery would yield any factual information that would bear on the legal issues presented in Defendants' motion. No discovery is required to determine whether the challenge to the alleged *de facto* wilderness policy is an improper programmatic challenge.

Plaintiffs also argue that Defendants have placed facts in controversy by disagreeing with Plaintiffs' assertion that Secretarial Order 3310 immediately changes the management of 6 million acres of public land. See Plf. Mem. at 17. But the fact that Plaintiffs and Defendants disagree over the legal effect of Secretarial Order 3310 and, for that matter, the MLP policy, does not mean that Defendants are placing a factual issue in controversy. See Sizova, 282 F.3d at 1326 (jurisdictional discovery is appropriate where "'*pertinent facts* bearing on the question of jurisdiction are controverted'") (emphasis added) (citation omitted). As Defendants explained in their motion to dismiss, both the Secretarial Order and the MLP policy set forth policies and procedures but do not

themselves implement any changes to the management of particular areas.  See Def. Mem. at 9-13, 34-35.  The fact that Plaintiffs believe actions may be taken under these policies that affect their interests does not mean the policies themselves have any immediate effect.  In short, no discovery is necessary to determine whether the Secretarial Order or MLP policy are, on their face, final agency actions.

> **3.      Discovery is Not Necessary to Determine Whether Plaintiffs' Claims Are Ripe for Review**

In the motion to dismiss, Defendants also argued that Plaintiffs' claims challenging Secretarial Order 3310 and the MLP policy were not ripe for review.  Def. Mem. at 35-43.  As stated by the Supreme Court, the ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967).  Defendants argued that the case was not ripe because Plaintiffs were not challenging the application of Secretarial Order 3310 and the MLP policy in particular contexts and to particular projects.  Def. Mem. at 40-43.  Defendants also pointed out the circumstances were similar to those presented in Utah v. U.S. Dep't of Interior, 535 F.3d 1184 (10th Cir. 2008), in which the Tenth Circuit found that a challenge to a 2003 settlement agreement between Utah and other entities and DOI ("Wilderness Settlement") was not yet ripe because it had not yet been applied in a particular context.  Id. at 1195-98.  No discovery is necessary for the Court to determine the legal issue of whether Plaintiffs' claims are ripe due to the fact that they have yet to be applied in a specific context.

Defendants also argued that Plaintiffs' claims regarding Secretarial Order 3310 were not ripe because a continuing resolution passed by Congress in April 2011 prohibits BLM from using funds to implement, administer, or enforce Secretarial Order 3310.  Def. Mem. at 42.  Following that action by Congress, the Secretary issued a memorandum on June 1, 2011, stating that BLM would not designate Wild Lands under the order.  Id.  Subsequently, BLM issued Instruction Memorandum 2011-154 regarding the requirement in the Federal Land Policy and Management Act ("FLPMA") to inventory lands with wilderness characteristics and to consider such characteristics during the land use planning process.[2]  As with the June 1, 2011 memorandum from the Secretary, Instruction Memorandum 2011-154 does not provide for the designation of Wild Lands.  The Secretary has not issued any further direction regarding the management of lands with wilderness characteristics.

Plaintiffs argue that discovery relating to Secretarial Order 3310 is necessary because they dispute that it has not been applied in specific contexts.  Plf. Mem. at 17.  They submit a declaration stating that BLM denied permission to Carbon County for a sage grouse habitat restoration project because it would involve the use of motorized vehicles.  Id. at 18; Declaration of Rex Sacco ¶¶ 6-7 (Dkt. No. 83-10).  This assertion does not support jurisdiction at the time the Counties filed suit because it allegedly occurred on March 30, 2011, which is after the Counties filed their amended complaint on March 22, 2011 (Dkt. No. 31).  See Powder River Basin, 54 F.3d at 1483-84 (ripeness must be established at the time that the complaint is filed).  Furthermore, if the Plaintiffs believe that the denial of the sage grouse restoration project affects their interests, then they could challenge that decision, but they have not done so.  Moreover, the discovery sought by Plaintiffs would not affect

---

[2] Instruction Memorandum 2011-154 is available at:
http://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/national_instru

the legal question as to whether Secretarial Order 3310 and the MLP policy are, on their face, ripe for review. Plaintiffs should not be permitted to engage in a fishing expedition in an attempt to discover actions that may be ripe for review.

Plaintiffs also argue that they are entitled to discovery regarding what action the Secretary will take with respect to Secretarial Order 3310 in fiscal year 2012, beginning October 1, 2011. Plf. Mem. at 18. Congress has extended into fiscal year 2012 the Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, 125 Stat. 38 (2011), which, under section 1769, prohibits the use of appropriated funds to implement, administer, or enforce Secretarial Order 3310 in fiscal year 2011. See Continuing Appropriations Act, 2012, Pub. L. No. 112-36 § 101, 125 Stat. 386 (2011). If Congress decides to lift that prohibition and the Secretary makes a decision to reinstate Secretarial Order 3310, those changes will be made public. Furthermore, any such future actions by the Secretary cannot form the basis of jurisdiction, because jurisdiction is determined at the time that a complaint is filed. See Powder River Basin, 54 F.3d at 1483-84. Moreover, any challenge to potential future action by the Secretary is certainly not ripe for review. Therefore, there is no basis for discovery as to what the Secretary's future actions might be.

### 4. Discovery is Not Necessary to Determine Whether the Court Has Jurisdiction Over Plaintiffs' Breach of Contract Claims

In the motion to dismiss, Defendants also argued that the Court lacked jurisdiction over Plaintiffs' claims for breach of the Wilderness Settlement because the court in the Utah case did not retain jurisdiction over the settlement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378-81 (1994) (holding that the district court lacked jurisdiction to enforce a settlement

ction/2011/IM_2011-154.html.

agreement where it had not retained jurisdiction over the settlement or incorporated the settlement agreement into an order).  See Def. Mem. at 43-44.  Further, Defendants argued that the Court lacked jurisdiction because the APA does not waive sovereign immunity for breach of contract claims seeking declaratory or injunctive relief.  See Robbins v. BLM, 438 F.3d 1074, 1082 (10th Cir. 2006). See id. at 44.  This is a purely legal question that can be resolved by the Court without discovery.

### 5. Discovery is Not Necessary to Determine Whether BLM May Manage Lands to Protect Wilderness Characteristics

Finally, Defendants argued that Plaintiffs' claims alleging that BLM lacked the authority to inventory and manage lands to protect wilderness characteristics were incorrect as a matter of law and therefore should be dismissed.  Def. Mem. at 45-51.  Defendants argued that FLPMA provides BLM with broad authority and discretion to manage public lands under the principle of multiple use and sustained yield, including the discretion to allow some uses to the exclusion of others.  See, e.g., New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 710 (10th Cir. 2009) ("The Act does not mandate that every use be accommodated on every piece of land; rather, delicate balancing is required.").  Defendants also pointed out that the Ninth Circuit has explicitly required that BLM consider wilderness characteristics during the land use planning process.  Or. Natural Desert Ass'n v. BLM, 625 F.3d 1092, 1113-14 (9th Cir. 2010).  Discovery would not aid the Court in resolving the legal question of whether BLM has the authority under FLPMA to inventory and manage lands to protect wilderness characteristics.

In sum, the discovery sought by Plaintiffs would not provide "pertinent facts bearing on the question of jurisdiction."  Sizova, 282 F.3d 1326 (citation omitted).  Even if discovery produces

more factual information along the lines alleged by the Plaintiffs, it still will not help them establish jurisdiction for the reasons discussed above.  Therefore, the request for jurisdictional discovery should be denied.  See Grynberg, 666 F. Supp. 2d at 1228 (denying request for jurisdictional discovery where the requested discovery was "unlikely to have a real impact on the resolution of those issues").

### C. Even if the Court Decides that Some Discovery is Appropriate, It Should Deny Plaintiffs' Requests Because They Are Overly Broad

If the Court decides that some discovery is appropriate, it should deny Plaintiffs' request as overbroad.  See Ruzzo, 2006 WL 2457690, at *2 (finding that requested jurisdictional discovery was overbroad).  Jurisdictional discovery should be "narrowly tailored" to the jurisdictional issues before the Court.  Hansen v. PT Bank Negara Indonesia (Persero), TBK, 601 F.3d 1059, 1064 (10th Cir. 2010); see also Grynberg, 666 F. Supp. 2d at 1228.  Plaintiffs' requests are not narrowly tailored and therefore should be denied.

Plaintiffs' first request seeks "all documents and records . . . with respect to the parcels of public lands that were the subject of expressions of interest (EOI) for public lands administered by BLM Utah between January 1, 2009 and the present."  Plaintiffs' Discovery Requests Regarding Jurisdiction ("Plf. Requests") at 4 (Dkt. No. 83-7).  Further, Plaintiffs seek "the notes and other documentation that may exist regarding the EOI parcels that were not offered for sale on the basis that such lands were within the boundaries of a citizen-proposed wilderness area or were said to have wilderness character."  Id.  As discussed above, Plaintiffs have already submitted a BLM Deferred Lands List indicating that certain parcels were deferred from leasing in 2010 due to the proposed Red Rocks Wilderness Act.  See Deferred Lands List at 3 (Dkt. No. 83-5).  BLM does not

dispute that fact and therefore no discovery should be necessary. See Breakthrough Mgmt. Grp., 629 F.3d at 1189 (jurisdictional discovery should be granted only if "'pertinent facts bearing on the question of jurisdiction are *controverted*'") (emphasis added) (quoting Sizova, 282 F.3d at 1326). But, even if the Court allows this request, the request for "all documents and records" relating to any expressions of interest is overbroad.

Plaintiffs' second request asks for documents showing the number of lease nominations and the number of leases sold over a 6-year period from 2005 – 2011. Plf. Requests at 4. The number of parcels nominated and sold is simply not relevant to the jurisdictional issues before the Court. Plaintiffs argue that "[i]t is reasonable to assume that if a parcel is nominated by industry, a company or industry representative will buy it" and that this would establish redressability. Plf. Mem. at 15. This information, however, would not cure the lack of redressability. The Court still could not order BLM to offer particular parcels for sale, and therefore the claims would still fail for lack of redressability. See, e.g., Sullivan, 969 F.2d at 882. Accordingly, this request would not yield any information relevant to the jurisdictional issues and should be denied.

Plaintiffs' third request seeks "all documents pertaining to Title V permits or amendments to such permits currently denied, on hold or being process[ed] sought by a county where Utah BLM determined that the use of the road affected or was located in a citizen-proposed wilderness area." Plf. Requests at 4. As discussed above, there is no need for discovery on this subject because information regarding Plaintiffs' rights of way and applications regarding such rights of way is in the possession of the Plaintiffs. Therefore, this request should be denied.

Plaintiffs' fourth request seeks "all documents from December 23, 2010 to the present that pertain to BLM's implementation of and for funding for the implementation of Secretarial Order

3310 in Utah." Plf. Requests at 5. They also request that Defendants explain "what BLM must do following enactment of the congressional rider prohibiting the expenditure of funds to implement Secretarial Order 3310 and what Defendants will do upon its expiration." Id. This request is not addressed to any particular facts that are in dispute and instead is a fishing expedition intended to identify some agency action that Plaintiffs might challenge. Moreover, the request for documents generated after the filing of the complaints is inappropriate because jurisdiction must be established as of the time of the filing of the complaints. See Utah Ass'n of Counties, 455 F.3d at 1099-1100.

Plaintiffs' fifth request seeks "all documents pertaining to BLM implementation of a 'take care' policy dating from on or after January 1, 2009." Plf. Request at 5. Plaintiffs' complaints, however, do not make any allegations regarding a "take care" policy, let alone identify any actions taken pursuant to such a policy that have affected their interests. And, as with the previous request, the request for documents after the filing of the complaints is inappropriate. Plaintiffs are simply fishing for an agency action that might be subject to challenge. Plaintiffs' should know before filing a complaint whether an action has been taken that affects their interests.

In short, even if the Court decides that some discovery is appropriate, Plaintiffs' requests should be denied or narrowed because "[a]lthough these requests may provide valuable information regarding the case at large, . . . they are not narrowly tailored to address the limited question of . . . jurisdiction." Grynberg, 666 F. Supp. 2d at 1228.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for an extension of time to respond to Defendants' motion to dismiss and their motion for jurisdictional discovery should be denied.

Respectfully submitted this 17th day of October, 2011.

19

DAVID B. BARLOW
United States Attorney
JARED C. BENNETT
Assistant United States Attorney

IGNACIA S. MORENO
Assistant Attorney General

*/s/ Luther L. Hajek*
LUTHER L. HAJEK (admitted pro hac vice)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St. - South Terrace, Suite 370
Denver, CO 80202
Telephone: 303/844-1376
Telefax: 303/844-1350
luke.hajek@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2011, I electronically filed the foregoing OPPOSITION TO PLAINTIFFS' JOINT MOTION FOR JURISDICTIONAL DISCOVERY AND FOR AN EXTENSION OF TIME TO RESPOND TO THE MOTIONS TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

/s/ Luther L. Hajek
Luther L. Hajek
Trial Attorney
U.S. Department of Justice